**UNITED STATE DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| JOHN T. MARTIN, an individual; JOHNATHON R. MARTIN, an individual; BRADLEY D. KEYES, and individual; and MARTY BOGER, an individual )<br><br>Plaintiffs, )<br><br>versus )<br><br>SPRING BREAK '83 PRODUCTIONS, LLC, a California Limited Liability Company; SPRING BREAK '83 DISTRIBUTION, LLC, a California Limited Liability Company; BIG SKY MOTION PICTURES, L.L.C., California Limited Liability Company; SPRING BREAK '83 LOUISIANA, L.L.C., a Louisiana Limited Liability Company; GEORGE BOURS, an individual; JOHN HEREMANSEN, an individual; MARS CALLAHAN, an individual; RANDY CHORTKOFF, an individual,<br><br>Defendants. )| CASE NO. 2:09-cv-07520 HGB-KWR |

JOHN T. MARTIN, an individual;
JOHNATHON R. MARTIN, an
individual;
BRADLEY D. KEYES, and individual;
and MARTY BOGER, an individual

       Plaintiffs,

versus                CASE NO. 2:09-cv-07520 HGB-KWR

SPRING BREAK '83 PRODUCTIONS,
LLC, a California Limited Liability
Company; SPRING BREAK '83
DISTRIBUTION, LLC, a California
Limited Liability Company; BIG SKY
MOTION PICTURES, L.L.C.,
California Limited Liability Company;
SPRING BREAK '83 LOUISIANA,
L.L.C., a Louisiana Limited Liability
Company; GEORGE BOURS, an
individual; JOHN HEREMANSEN, an
individual; MARS CALLAHAN, an
individual; RANDY CHORTKOFF, an
individual,

       Defendants.

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

**MAY IF PLEASE THE COURT:**

## I.    INTRODUCTION

      Defendants, SPRING BREAK '83 PRODUCTION, LLC, a California Limited

Liability Company; SPRING BREAK '83 DISTRIBUTION, LLC, a California Limited

Liability Company; BIG SKY MOTION PICTURES, LLC, a California Limited Liability

{N2163076.1}

Company; SPRING BREAK '83 LOUISIANA LLC, a Louisiana Limited Liability Company; GEORGE BOURS, an individual; JOHN HERMANSEN, an individual; MARS CALLAHAN, an individual; and RANDY CHORTKOFF, an individual, (hereinafter, "Defendants"), move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.   FACTUAL BACKGROUND

The four Plaintiffs in this action, John T. Martin, Johnathon R. Martin, Bradley D. Keyes, and Marty Boger, were employed as grips during the production of *Spring Break '83*, a motion picture which was shot in Hammond, Louisiana and the surrounding areas of Hammond between October 6, 2007 and December 22, 2007.  (Declaration of John Hermansen, ¶¶ 5-6, attached hereto as Exhibit A)[1].  The four Plaintiffs were solely employed by Defendant Spring Break '83 Louisiana L.L.C. during this time.  (*See* Exhibit A, ¶ 7).  As will be shown below, none of the other Defendants, including Spring Break '83 Production, L.L.C., a California Limited Liability Company; Spring Break '83 Distribution, L.L.C., a California Limited Liability Company; Big Sky Motion Pictures, L.L.C., a California Limited Liability Company; George Bours, John Hermansen, Mars Callahan and Randy Chortkoff were the employer of the Plaintiffs.

The terms and conditions of Plaintiffs' employment with Spring Break '83 Louisiana L.L.C. were covered by a Collective Bargaining Agreement ("CBA") between Spring Break '83 Louisiana L.L.C. and the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists, and Allied Crafts, the AFL-CIO, as well

---

[1] Exhibit A is a previously filed Declaration of John Hermensen when the case was filed in California.  It was used for the Defendants' successful Motion to Transfer.  While that Declaration contained more than one exhibit, only Exhibit C to that Declaration, the CBA, is relevant to this Motion, and therefore only it is included.

as the AFL-CIO's Local Union Nos. 478 (the "Union").  (Plaintiffs' Second Amended

Complaint, Rec. Doc. #42, ¶ 19; Deposition of James Varga, West Coast Counsel of the

Union, p. 10, lines 6-13, attached hereto as Exhibit B[2]).  A true and correct copy of the

effective CBA is attached hereto as Exhibit C.  (*See* Exhibit A, ¶ 10, Exhibit C attached

thereto and hereto).  The CBA states that a majority of employees in the appropriate

collective bargaining unit designated the Union as their representatives for purposes of

negotiating their wages, hours, and working conditions. (Exhibit C, Article 1).  Further, it

states:

> The collective bargaining unit consists of all employees
> employed by the Employer, its agents, affiliates, or
> instrumentalities, including employees employed in the crafts
> or classifications listed in Appendix A to this Agreement but
> excluding all production assistants, transportation
> department employees, camera department employees,
> production design/art direction employees and guards.  **The
> Employer hereby recognizes the Union as exclusive
> representative of the employees in the bargaining unit.**

*Id.*  Appendix A, referenced in the above paragraph, lists "Grips," including key, best boy

grip, dolly grip, crane operators, grips and pre riggers, as members of the collective

bargaining unit.  (Exhibit C, Appendix A thereto).  It is undisputed that all four of the

Plaintiffs were employed by Spring Break '83 Louisiana L.L.C. as grips, and therefore,

parties to the collective bargaining agreement. (Rec. Doc. 42, ¶ 19; Exhibit A, ¶ 6;

Exhibit B, p. 7, line 25, p. 8, lines 1-5, p. 37, lines 17-20).  In fact, the Plaintiffs admit the

---

[2] Mr. Varga is an attorney by trade and well versed in federal labor law. (Exhibit B, p. 5, lines 15-25, p. 6, lines 1-14.  He stated that the Union was within its right under federal labor law to settle the grievances on behalf of its members, including the Plaintiffs. (Exhibit B, p. 33, lines 21-25, p 34, lines 1-4).  Therefore, if the Plaintiffs are allowed to proceed with these claims, they will be circumventing an agreement their Union negotiated on their behalf with Spring Break '83 Louisiana, LLC, and will also be shirking their duties as member of the Union, all while enjoying the benefits of the settlement the Union negotiated.  This may open the Union to liability, as the Defendants have filed a third party complaint against the Union, asking that the Union be held liable if the Defendants are held liable in any way.  That lawsuit is stayed pending this Motion.

same in their complaint, when they stated, "Plaintiffs were paid for the hours they submitted on their timecards in accordance with the terms of a collective bargaining agreement, for the initial period of employment." (Rec. Doc. 42, ¶ 19).

Towards the end of the production of the motion picture *Spring Break '83*, the Union filed a grievance on behalf several members, pursuant to the collective bargaining agreement.  (Exhibit B, p. 10, lines 14-18).  Relevant to this lawsuit, the grievance alleged that several employees of Spring Break '83 Louisiana L.L.C. were not paid correctly towards the end of the production of *Spring Break '83*.  (Exhibit B, p. 10, lines 21-25, p. 11, line 1).  Specifically, the union claimed that certain members of the crew worked a "wrap week" but were not paid for those hours worked. (Exhibit B, p. 27, lines 9-18).  That grievance included the Plaintiffs in this case.  (Exhibit B, p. 11, lines 2-4).  However, the Union, and specifically Mr. Varga, investigated the claims of those members, and many of the claims as to the number of days worked and amount of overtime worked were disputed by other union members working on the set of *Spring Break '83*.  (Exhibit B, p. 26, line 25, p. 27, lines 1-15).[3]

After the union conducted the investigation on behalf of the union members, it entered into settlement discussions with Spring Break '83 Louisiana L.L.C. in an attempt to have the union members' claims resolved without court action.  (Exhibit B, p. 30, lines 4-9).  The settlement agreement between Spring Break '83 Louisiana L.L.C., on the one hand, and the Union, on behalf of its specific members who made claims, on the other

---

[3] The IATSE International Representative, Jim Varga, conducted the investigation on behalf of the Union members.  His investigation uncovered that other union members disputed the Plaintiffs' claim that they worked during the "wrap week." (Exhibit B, p. 32, lines 1-23). Because both the employer and fellow union members disputed the hours allegedly worked by the Plaintiffs, there is no question there was a dispute as to the "hours worked" by Plaintiffs.

hand, specifically states "disputes remain between the parties as to the amounts that may be due."  (Exhibit B, p. 22, line 25, p. 23, lines 1-11, Exhibit Varga 2 attached thereto, p. 1).  Further, the settlement agreement states, "[A]nd the Union has agreed on its own account and as the authorized collective bargaining representative on behalf of the IATSE Employees to accept those amounts as provided herein" and that the "parties now desire to settle the dispute between them on the terms and conditions set forth herein."  (Exhibit B, Exhibit Varga 2 attached thereto, p. 2).

The Settlement Agreement between the Union, on behalf of its members, and Spring Break '83 Louisiana, L.L.C., stated that the Producer of the film agreed to pay the amounts owed to the IATSE Employees as depicted in Schedule One, "which are deemed to be the amounts due and owing."  (Exhibit B, Exhibit Varga 2 attached thereto, p. 2).  This included a payment of $742.50 to Plaintiff Marty Boger, a payment of $687.50 to Plaintiff Bradley Keyes, a payment to Plaintiff John T. Martin for $1,116.50 and a payment to Plaintiff Johnathon R. Martin for 687.50. (Exhibit B, Exhibit Varga 2 attached thereto, Schedule One).  Further, these settlement proceeds were paid, and the checks cashed, by the Plaintiffs. (Declaration of John Hermansen, ¶ 10, attached hereto as Exhibit D).

## III.    PROCEDURAL BACKGROUND

The Plaintiffs filed suit in the Superior Court of California for the County of Los Angeles.  The Defendants then removed the case to the United States District Court for the Central District of California, Western Division.  (Rec. Doc. 1).  The Defendants then filed a Motion to Transfer the case to the Eastern District of Louisiana, as the case had absolutely no relation to California, being that *Spring Break '83* was filmed in Louisiana,

and Spring Break '83 Louisiana, L.L.C., a Louisiana Limited Liability Company, was the company wholly responsible for shooting the film and the sole employer of the Plaintiffs. (Rec. Doc. 25).   The Court granted the Defendants' Motion to Transfer, and it was subsequently transferred to this Honorable Court. (Rec. Doc. 33).

The Plaintiffs' Second Amended Complaint, the Complaint currently before this Court, asserts several causes of action arising out of Plaintiffs' employment with Defendant, Spring Break '83 Louisiana, L.L.C., including wage violations pursuant to the FLSA, which include minimum wage and overtime violations.   (Rec. Doc. 42).   The Second Amended Complaint also asserts an action for breach of contract based on their allegation that they were not paid wages for their work on *Spring Break '83 Louisiana, L.L.C.* in November of 2007, as well as an action under Louisiana's Wage Payment Statute, La. R.S. 23:631, for 90 days wages, as well as costs and attorney's fees.   *Id.*

## IV.   SUMMARY JUDGMENT STANDARD

The disposition of an action through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986).  Federal Rule of Civil Procedure 56(c) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a) (emphasis added).

A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v Catrett,* 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing laws" are material. *Anderson,* 477 U.S. at 248. Disputed fact issues that are "irrelevant or unnecessary" cannot be considered by a court in ruling on a summary judgment motion. *Id.*

A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324. When the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Id.* A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 248. If the nonmovant does not respond in this manner, summary judgment "*shall* be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added).

The non-movant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir. 1992). While inferences drawn from the record are to be viewed in the light most favorable to the nonmoving party, conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are

insufficient to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

## V.   LAW AND ARGUMENT

### a.   The Plaintiffs' Only Employer Under the Law was Spring Break '83 Louisiana LLC

The Plaintiffs filed suit for FLSA violations, Louisiana Wage Payment violations and breach of contract against eight entities and/or individuals despite the fact that only one of the named Defendants, Spring Break '83 Louisiana, L.L.C, can be considered their employer under the Fair Labor Standards Act or Louisiana law, and therefore be subject to suit for Fair Labor Standards Act violations, Louisiana Wage Payment Statute violations and breach of contract.[4]

The Fair Labor Standards Act forces "employers" to pay employees minimum wages, and prohibits "employers" from employing employees for longer than forty hours in a workweek without paying time-and-a-half for each hour worked over forty. *See* 29 U.S.C. §§ 206, 207.  Liability under the FLSA is imposed only upon an employer.  29 U.S.C. §§ 206-207.  The Fair Labor Standards Act defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203.  To determine whether a party qualifies as an employer, the Fifth Circuit looks to the "economic realities" of employment.  *Watson v*. Graves, 909 F. 2d 1549, 1553 (5th Cir. 1990); *Donovan v. Grim Hotel Company*, 747 F. 2d 966, 972 (5th

---

[4] Plaintiffs do not specify which contract was breached but since the Plaintiffs were employed by Spring Break '83 Louisiana, LLC pursuant to the CBA, it appears that the CBA is the contract alleged to have been breached.  Spring Break '83 Louisiana, LLC is the only Defendant that was a party to the CBA and therefore the only entity that can be sued for breaching that contract.  Moreover, the alleged breach

Cir. 1984).  In analyzing the economic realities, the Fifth Circuit analyzes whether the individual or the corporation "independently exercised control over the work situation." *Donovan v. Sabine Irrigation Co.*, 695 F. 2d 190 (5th Cir. 1983).  The Supreme Court has held that the definition of employer may extend to those with "managerial responsibilities" and "substantial control of the terms and conditions of the [employee's] work."  *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 431, 38 L. Ed. 2d 406 (1973). Managerial responsibilities include controlling financing, hiring, visiting locations, record keeping, supervising employees, drafting corporate memoranda, maintaining onsite officers, wholly owning corporations, and overseeing employee compensation and benefits.  *See Grim Hotel*, 747 F. 2d at 972; *Reich v. Circle C Inv., Inc.*, 998 F. 2d 324, 329 (5th Cir. 1993); *Donovan v. Agnew*, 712 F. 2d 1509, 1511 (1st. Cir. 1983).

The Louisiana Wage Payment Act, La. R.S. 23:631(A)(1)(a), states:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of **the person employing such laborer** or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

(emphasis added).

Simply put, no defendant other than Spring Break '83 Louisiana L.L.C. could be considered an employer of the Plaintiffs under the Fair Labor Standards Act or the Louisiana Wage Payment Act, for no other Defendant independently exercised control over the Plaintiffs' work situation, or had substantial control of the terms of conditions of the Plaintiffs' work.

---

of contract was settled with the Union on behalf of all Union members (including Plaintiffs) as discussed more fully below.

  i.  <u>Spring Break '83 Productions, LLC, a California Limited Liability Company</u>

Spring Break '83 Productions, LLC, was formed to raise the funds needed to produce the movie and was used for that purpose.  (Exhibit D, ¶ 1).  Spring Break '83 Production, LLC had no involvement with the production of the film *Spring Break 83.* (Exhibit D, ¶ 1).  Specifically, it was not an entity responsible for hiring, supervising, paying, and/or terminating any employees of Spring Break '83 Louisiana, LLC.   (Exhibit D, ¶ 1).  Spring Break '83 Louisiana, LLC was formed to produce the film.  It alone was the entity responsible for hiring, firing, and supervising of all crew members, including Plaintiffs.  (Exhibit D, ¶ 1).

  ii.  <u>Spring Break '83 Distribution LLC, a California Limited Liability Company</u>

Spring Break '83 Distribution LLC was formed to raise money for publicity and advertising of the film and was used for that purpose.  (Exhibit D, ¶ 1).  Spring Break '83 Distribution, LLC had no involvement with the production of the film *Spring Break 83.* (Exhibit D, ¶ 1).  Specifically, it was not an entity responsible for hiring, supervising, paying, and/or terminating any employees of Spring Break '83 Louisiana, LLC.   (Exhibit D, ¶ 1).  Spring Break '83 Louisiana, LLC was formed to produce the film.  It alone was the entity responsible for hiring, firing, and supervising of all crew members, including Plaintiffs.  (Exhibit D, ¶ 1).

  iii.  <u>Big Sky Motion Pictures, L.L.C.</u>

Big Sky Motion Pictures, L.L.C., a California Limited Liability Company, did not employ any of the Plaintiffs.  (Declaration of Mars Callahan, ¶ 7, attached hereto as Exhibit E).  Further, Big Sky Motions Pictures, LLC was not a party to the CBA which governed the terms and conditions of Plaintiffs' employment and was not directly in

charge of the day to day operations of *Spring Break '83.* (Exhibit E, ¶ 8).  The day to day operation and production of *Spring Break 83* were handled by Spring Break '83 Louisiana, LLC, which was a signatory to the CBA.  (Exhibit E, ¶ 8).  Big Sky Motion Pictures, L.L.C. did not act directly in the interests of Spring Break '83 Louisiana, L.L.C. as it related to the employment, and in this case, payment of the Plaintiffs.  (Exhibit E, ¶ 9).

       iv.      <u>George Bours</u>

George Bours, an individual, was a Producer of the film *Spring Break '83.* (Declaration of George Bours, ¶ 1, attached hereto as Exhibit F).  He was largely responsible for the editing and post-production aspects of the film, and had very little to do with the day to day operation of the shooting of *Spring Break '83* in Louisiana. (Exhibit F, ¶ 2).  He did not hire the employees for Spring Break '83 Louisiana, LLC, including Plaintiffs, or change their pay. (Exhibit F, ¶ 3).   He did not make any recommendations regarding the hiring of the Plaintiffs.  (Exhibit F, ¶ 4).  Further, he did not make decisions regarding the Plaintiffs' pay, and did not supervise the Plaintiffs. (Exhibit F, ¶ 5).  Also, he did not maintain documentation of the Plaintiffs' employment. (Exhibit F, ¶ 6).  He did not exercise substantial control over the terms and conditions of the Plaintiffs' work.  (Exhibit F, ¶ 7).  He in no way acted directly in the interests of Spring Break '83 Louisiana, L.L.C. as it related to the employment, and in this case, payment of the Plaintiffs.  (Exhibit F, ¶ 8). Joy Czerwonky was the Line Producer and signed the CBA on behalf of Spring Break '83 Louisiana, LLC and was the supervisor of all departments of the production, including the direct supervision of the Plaintiffs. (Exhibit D, ¶ 1). After the grievance was filed, however, Mr. Bours and Mr. Hermansen

were primarily responsible for resolving the issue with assistance of legal counsel. (Exhibit D, ¶ 9).

### v.   John Hermansen

John Hermansen, an individual, was not involved with the shooting and production of *Spring Break '83* in Louisiana.  (Exhibit D, ¶ 2).  He was employed by River Sig, L.L.C. for the production of a television show named *Casting Call.*  (Exhibit D, ¶ 3).  He was also employed by Spring Break '83 Louisiana, L.L.C. as a producer but was largely responsible for the editing, music and post-production aspects of the film. (Exhibit D, ¶ 4).   He did not hire Plaintiffs or change Plaintiffs' pay for Spring Break '83 Louisiana, L.L.C.  (Exhibit D, ¶ 5). He did not make any recommendations regarding the hiring of the Plaintiffs.  (Exhibit D, ¶ 6).  Further, he did not make decisions regarding the Plaintiffs' pay, and did not supervise the Plaintiffs. (Exhibit D, ¶ 7). He in no way acted directly in the interests of Spring Break '83 Louisiana, L.L.C. as it related to the employment, and in this case, payment of the Plaintiffs. (Exhibit D, ¶ 8).  Joy Czerwonky was the Line Producer and signed the CBA on behalf of Spring Break '83 Louisiana, LLC and was the supervisor of all departments of the production, including the direct supervision of the Plaintiffs.  (Exhibit D, ¶ 1). After the grievance was filed, however, Mr. Bours and Mr. Hermansen were primarily responsible for resolving the issue with assistance of legal counsel.  (Exhibit D, ¶ 9).

### vi.   Mars Callahan

Mars Callahan was the writer and an executive producer of *Spring Break '83*. (Exhibit E, ¶ 1).  He was not the Plaintiffs' direct supervisor. (Exhibit E, ¶ 2). He did not hire the Plaintiffs nor did he change their pay.  (Exhibit E, ¶ 3).  He did not maintain

documentation of the Plaintiffs' employment.  (Exhibit E, ¶ 4).  He did not exercise substantial control over the terms and conditions of the Plaintiffs' work.  (Exhibit E, ¶5).

      vii.      <u>Randy Chortkoff</u>

Randy Chortkoff was an executive producer of *Spring Break '83*.  (Declaration of Randy Chortkoff, ¶ 1, attached hereto as Exhibit G).  He was not involved with the day-to-day operations of the filming of *Spring Break '83*.  (Exhibit G, ¶ 2).  He was not the Plaintiffs' direct supervisor.  (Exhibit G, ¶ 3).  He did not hire the Plaintiffs nor did he change their pay.  (Exhibit G, ¶ 4).  He did not supervise the Plaintiffs.  (Exhibit G, ¶ 5).  He did not maintain documentation of the Plaintiffs' employment.  (Exhibit G, ¶6).  He did not exercise substantial control over the terms and conditions of the Plaintiff's work.  (Exhibit G, ¶ 7).  He in no way acted directly in the interests of Spring Break '83 Louisiana L.L.C. as it related to the employment, and in this case, payment of the Plaintiffs.  (Exhibit G, ¶ 8).

It is clear that no Defendant other than Spring Break '83 Louisiana L.L.C. was an employer of the Plaintiffs' under the FLSA or Louisiana Wage Payment law.  The Plaintiffs can offer no evidence indicating otherwise.  Therefore, these certain Defendants should be granted summary judgment on the basis that they are not employers under the FLSA or Louisiana Wage Payment law.  And for the same reason, these Defendants were not parties to the CBA and could not have had a contract for employment with the Plaintiffs, as they were not the Plaintiffs' employers.  Therefore, they must also be granted summary judgment on the Plaintiffs' breach of contract claims.

**b.     The Plaintiffs' Claims Were Settled by Their Union**

It cannot be disputed that the Plaintiffs were represented by a Union in their employment with Spring Break '83 Louisiana, L.L.C.  As stated above, the Plaintiffs admit the same in their complaint, when they stated, "Plaintiffs were paid for the hours they submitted on their timecards in accordance with the terms of a collective bargaining agreement, for the initial period of employment."   (Rec. Doc. 42, ¶ 19). Further, in cannot be disputed that the Union filed a grievance based on its members' complaints.  (Exhibit B, p. 10, lines 14-18).  Also, it cannot be disputed that the Union entered into a settlement agreement with Spring Break '83 Louisiana, L.L.C. whereby all of the members' claims, including those of the Plaintiffs, were settled. (Exhibit B, Exhibit Varga 2 attached thereto, Schedule One).   Finally, it cannot be disputed that the Plaintiffs cashed their settlement checks.  (Exhibit D, ¶ 10).

When a Union negotiates a settlement on behalf of its members, those employees are "bound by the terms of the settlement agreement" negotiated by their bargaining representative.  *United State Postal Service and Levance McCullough, Jr.*, 300 NLRB No. 23 (1990).  Further, in the Union's role as the exclusive agent for all employees in the bargaining unit, "the union has the power to sift out frivolous grievances, to abandon processing of a grievance which it determines in good faith to be meritless, **and to settle disputes with the employer short of arbitration.**" *Freeman v. O'Neal Steel, Inc.*, 609 F. 2d 1123 (5th Cir. 1980), *citing Harris v. Chemical Leaman Tank Lines, Inc.*, 437 F. 2d 167, 171 (5th Cir. 1971).  Therefore, it is clear the Union was within its power to negotiate a settlement on behalf of its members, including the Plaintiffs.  This is particularly true here when the Plaintiffs' claims were directly

refuted by fellow Union members who told the Union investigator, Mr. Varga, that Plaintiffs had not worked had not worked any of the hours they claimed to have worked.

It is undisputed that all the Plaintiffs accepted Spring Break '83 Louisiana, L.L.C.'s tender of payment in the amount negotiated with the Union, since there was a bona fide dispute as to the number of hours worked and the amount of wages owed. Spring Break '83 Louisiana, L.L.C. tendered payment to the members of the Union without admitting liability, as the "Agreement, and its performance, does not constitute and will not be construed as an admission by either party of the truth of any contested matter, or any liability, wrongful act, or omission, except as expressly provided herein." (Exhibit B, Exhibit Varga 2 attached thereto, ¶ IV).  When the Union agreed to the settlement, its representative signed the settlement agreement.   (Exhibit B, Exhibit Varga 2 attached thereto).  The Settlement Agreement expressly provided:

> The Union on its own behalf and on behalf of the IATSE Employees agrees and acknowledges that the Union has not and will not file any complaints, charges or any other proceedings against Producer, its successors, licenses and/or assignees, with any agency, court, administrative body, or in any other forum, on condition that payment is full is made pursuant to the terms of this Settlement Agreement.

(Exhibit B, Exhibit Varga 2 attached thereto, ¶ II(D)).  Finally, the Agreement states:

> This Settlement Agreement contains the sole and entire agreement and understanding of the parties with respect to the manner of moving forward to reach a complete resolution of the matters described herein, and no other agreement, oral or written, shall be deemed to exist or to bind either of the parties hereto.

(Exhibit B, Exhibit Varga 2 attached thereto, ¶ III).

The Plaintiffs may suggest that private settlements of FLSA claims are prohibited by the statute.  But that argument is directly contrary to recent precedent from within the

Fifth Circuit.  In *Martinez v. Bohls Bearing Equip. Co.,* 361 F. Supp. 2d 608 (W.D. Tex. 2005), the court acknowledged that some courts had reached different conclusions about whether FLSA claims can be settled privately.  That disagreement prompted the *Martinez* court to conduct an exhaustive examination of the FLSA's legislative history, controlling Supreme Court and Fifth Circuit decisions interpreting the FLSA, and relevant decisions from other jurisdictions.  *Id.* at 618-631.  Based on its detailed examination, the *Martinez* court concluded that parties may reach private compromises as to FLSA claims when there is a bona fide dispute over liability, such as the amount of hours worked or compensation due.  "A release of a party's rights under the FLSA is enforceable under such circumstances," the court ruled.  *Id.* at 631.

This Court should conclude the same.  As in *Martinez*, there is a bona fide dispute between the parties as to the amount of hours worked by the Plaintiffs and as to the compensation due to the Plaintiffs.  Mr. Varga, the bargaining representative for the Union during the Settlement, stated:

> …What I found was that there was discrepancies between what various people said in the various crafts trying to piece together that last week as to what happened.  And I was still focused on the entire crew, not just the grips or the electric crew, trying to piece together what happened.  And I think what was concluded was, as to that wrap period of time, there was just- no one really knew what happened that week, and everybody had their version of what happened. And I just saw that it was impossible for me to conclude what did or did not happen, other than I knew that there was a dispute over what had happened.

(Exhibit B, p. 32, lines 8-20).  Further, he testified:

> Q:      Do you recall a meeting in which you were trying- you were with Mr. Hermansen and you guys were going over records and there was a day when Mr. Martin said that he was wrapping and Mr. Off said that "We were the only people"- "The electricians were the only people wrapping

> that day, and if Mr. Martin says otherwise that he's lying," do you recall anything like that?
>
> A:      I don't recall the specifics of that, but I do recall that that's consistent with the kind of discrepancies in everyone's version of what had happened.  But I don't recall specifically that conversation.

(Exhibit B, p. 44, lines 22-25, p. 45, lines 1-9).

Spring Break '83 Louisiana L.L.C. settled this bona fide dispute when it agreed with the Plaintiffs' exclusive bargaining representative, the Union, to pay the Plaintiffs the agreed upon amount. (Exhibit B, p. 36, lines 17-20; Exhibit Varga 2 attached thereto).  The Plaintiffs accepted the tendered payment, and the settlement waived the claims they are pursuing in this litigation.  Their claims are therefore foreclosed as a matter of law and summary judgment should be granted on them.  *See also Thomas v. Louisiana*, 534 F. 2d 613, 615 (5th Cir. 1976) (supports the holding that a compromise and release of FLSA rights involving a bona fide dispute as to liability, such as the amount of hours worked or compensation due, is not prohibited).

This is further supported by the Fifth Circuit case of *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001), *cert. denied*, 534 U.S. 825 (2001), which held that liquidated damages and attorney's fees are not recoverable under the FLSA when the disputed overtime compensation has already been tendered by the employer, thereby implying that private settlements of FLSA claims are allowable for bona fide disputes as to liability, including number of hours worked or compensation due.

In *Samson,* the plaintiffs sued their former employer under the FLSA, claiming that the employer failed to comply with the FLSA's fluctuating workweek method of payment.  *Id.* at 632.  Midway through the trial, the employer tendered to the plaintiffs checks in the amount of unpaid wages allegedly owed to the plaintiffs.  *Id.* at 639.  The

employer made clear that the checks did not constitute an admission of liability, but rather were an effort to avoid protracted litigation on the issue of plaintiffs' unpaid wages.  *Id.*  At the end of the trial, the district court granted judgment on the pleadings against the plaintiffs on all their claims.  *Id.* at 640.

On appeal, the plaintiffs argued that "they should be awarded attorney's fees, penalties, and liquidated damages under federal and state law" based on the fact that the employer had tendered checks in the amount of unpaid wages allegedly owed to them.  *Id.* at 639.  The plaintiffs argued that the tendered checks amounted to an admission of liability on their claims for unpaid wages, thus entitling them to liquidated damages and attorney's fees under the FLSA.  *Id.*  The Fifth Circuit rejected the plaintiffs' argument.  The court noted that the employer's payment did not constitute an admission of liability.  Rather, the employer "tendered payment in order to avoid an additional day and a half of trial that would have been needed to adjudicate the claims for uncredited overtime hours."  *Id.* at 639.  The court concluded that "[w]ithout any admission of liability from [the employer], the Plaintiffs' arguments for attorneys fees, liquidated damages, and penalties quickly lose all merit."  *Id.* at 640.  Thus, the court held that the plaintiffs were not entitled to attorney's fees or liquidated damages based on the checks tendered by the employer, and implying that private settlements are allowable under the law.  *Id.* at 640-41.

For these reasons, summary judgment should be granted on the Plaintiffs' claims under the FLSA.  The Plaintiffs' Union negotiated a settlement with their only employer, Spring Break '83 Louisiana, L.L.C., and the Plaintiffs accepted those payments.  These claims were properly settled under the law.

  **c.** **Plaintiffs' Contract Claims and Wage Payment Claims Were Also Settled**

   Even if the Court finds that Plaintiffs' FLSA claims are viable and not precluded

by the settlement, the Defendants should be granted summary judgment on Plaintiffs'

breach of contract and Louisiana Wage Payment statute claims.

   The Settlement Agreement states:

> WHEREAS the parties acknowledge and agree that all payments pursuant to this Agreement are for work performed on the Picture in the State of Louisiana between October 6, 2007 and December 22, 2007.

(Exhibit B, Exhibit Varga 2 attached thereto, p. 1).  Further, the Settlement Agreement

states:

> WHEREAS Producer does not dispute that payments are due to the IATSE Employees and to the various Health and Welfare and Pension Plans on their behalf, although disputes remain between the parties as to the amounts that may be due.

> WHEREAS Producer does not dispute that payments are immediately due, subject to the provisions of this Settlement Agreement to the IATSE Employees.

(Exhibit B, Exhibit Varga 2 attached thereto, p. 1).  Also, the Settlement Agreement

provided:

> WHEREAS as full and final settlement and resolution of the Grievance, the Producer has agreed to provide Settlement Payments (as defined below) less any applicable employee withholding taxes and social security taxes, and any other withholding obligations required by law, including but not limited to all wages and contributions, including kit rentals and other miscellaneous amounts, to be paid by Producer to the IATSE Employees according to Schedule One, prepared and furnished by Producer to the Union (which schedule is attached hereto as "Schedule One" and made part hereof by this reference), and the Union has agreed on its own account and as the authorized collective bargaining representative on behalf of the IATSE Employees to accept

those amounts as provided herein.  The Producer remains fully responsible for all applicable employer payroll taxes and pay roll company fees.

…

WHEREAS without admitting any liability or wrongdoing by the parties to the Agreement, the parties now desire to settle the dispute between them on the terms and conditions set forth herein.

(Exhibit B, Exhibit Varga 2 attached thereto, p. 2).  Pertinent to the contract and Wage Payment claims, the Settlement Agreement states:

A.      The Producer agrees to pay the amounts owed to the IATSE Employees as depicted in Schedule One, which are deemed to be **the amounts due and owing.**

(Exhibit B, Exhibit Varga 2 attached thereto, ¶ I(A)).  (emphasis added).  As explained above, the Union represented to Spring Break '83 Louisiana L.L.C. that it had the full power and authority to enter into the Settlement Agreement and bind its members, including the Plaintiffs, to this settlement.  Also as explained above, the law supports this.  Therefore, the Plaintiffs' contract and Louisiana wage payment claims have been previously settled, and the Defendants should be granted summary judgment on those claims.

## VI.    CONCLUSION

The Plaintiffs are seeking a windfall of double damages and attorney's fees by suing the Defendants after their claims have been previously settled, and after they have cashed the settlement proceeds.  To allow this action to proceed would not only be contrary to law, it would be an injustice.  For the reasons set forth above, the Defendants should be granted summary judgment on all of Plaintiffs claims.  In the alternative, if the Court finds that the Plaintiffs' FLSA claims are viable, all of the

Defendants except for Spring Break '83 Louisiana L.L.C. should be dismissed, as Spring Break '83 Louisiana L.L.C. was the Plaintiffs' only true employer under the FLSA. Finally, the Defendants should be granted summary judgment on the Plaintiffs' contract and wage payment statute claims, regardless of what the Court finds on the Plaintiffs' FLSA claims.[5]

Respectfully submitted,

  /s/ Joseph F. Lavigne
Thomas P. Hubert  (LA #19625)
Joseph F. Lavigne  (LA #28119)
David K. Theard  (LA #31987)
**Jones, Walker, Waechter, Poitevent,**
    **Carrère & Denègre, L.L.P.**
201 St. Charles Avenue, 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8610
Facsimile:  (504) 589-8610
thubert@joneswalker.com
jlavigne@joneswalker.com
dtheard@joneswalker.com
**Counsel for Defendants**

---

[5]Even if the Court finds that Plaintiffs claims are proper against Defendants, Defendants are entitled to indemnification from the Union for any damages awarded to Plaintiffs.  Therefore, Defendants filed a Third Party Demand against the Union to protect themselves in the event this Motion for Summary Judgment is denied.  The claim has currently been stayed by the Court pending this Motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 10, 2011, I electronically filed the foregoing

*Memorandum in Support of Defendants' Motion for Summary Judgment* with the Clerk

of Court using the CM/ECF System which will send notification of such filing to all

counsel of record listed below:

Michael L. Tracy
Megan Ross Hutchins
Law Offices of Michael Tracy
2030 Main Street, Suite 1300
Irvine, California  92614
Telephone:  (949) 260-9171
Facsimile:  (866) 365-3051

Alan Kansas
The Law Office of Alan Kansas, LLC
1743 Stumpf Boulevard, Suite 200
Gretna, Louisiana  70056
Telephone:  (504) 210-1150
Facsimile:  (504) 617-6525

_/s/ Joseph F. Lavigne_____