UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN T. MARTIN, et al.                                          CIVIL ACTION

VERSUS                                                          NO. 09-7520

SPRING BREAK '83 PRODUCTION, LLC, et al.                        SECTION: "C" (4)

ORDER AND REASONS[1]

Before the Court is Defendant's Motion for Summary Judgment, filed by Defendants
Spring Break '83 Production, LLC, et al.  (Rec. Doc. 80).  Plaintiffs John T. Martin, et al. oppose
the motion.  (Rec. Doc. 84).  Having reviewed the memoranda of the parties, the record in the
case, and the applicable law, the Court GRANTS the motion for the following reasons.

I.  BACKGROUND

John T. Martin ("Martin"), Johnathon R. Martin, Bradley D. Keyes, and Marty Broger
("Plaintiffs") were employed as grips during the filming of *Spring Break '83* ("the movie"), a
motion picture filmed in and around Hammond, Louisiana between October 6, 2007 and
December 22, 2007.  (Rec. Doc. 80-1 at 2).  Plaintiffs were members of the International
Alliance of Theatrical Stage Employees Local 478 ("Union").  (Rec. Doc. 80-3 at 5-6, 10-11).
The Union entered into a Collective Bargaining Agreement ("CBA") with Spring Break '83
Louisiana, LLC ("Spring Break Louisiana") in October 2007.  *Id*. at 64.  The CBA stated that
Spring Break Louisiana "hereby recognizes the Union as exclusive representative of the
employees in the bargaining unit," and included provisions that outlined the procedure for union

---

[1]      Scott Reid, a second year law student at Tulane Law School, assisted in the preparation of this Order.

members to follow when filing grievances.  *Id*. at 56, 62-63.  Plaintiffs were members of the collective bargaining unit party to the CBA.  *Id*. at 66, 68.

Plaintiffs, together with other members of the collective bargaining unit party to the CBA, filed a grievance against Spring Break Louisiana toward the end of the production of the movie, alleging that Spring Break Louisiana had not paid wages due for work that they claimed to have completed under the CBA.  *Id*. at 10-11.  During an investigation of Plaintiffs' claims under the filed grievance, a Union representative concluded that it would be impossible to determine whether or not Plaintiffs had worked on the days they claimed they worked in the grievance.  *Id*. at 32.  Ultimately, the Union and Spring Break Louisiana entered a Settlement Agreement that settled the grievances.  *Id*. at 74, 78-80.  The Settlement Agreement stated in relevant part:

> The Union on its own behalf and on behalf of the IATSE Employees agrees and acknowledges that the Union has not and will not file any complaints, charges or other proceedings against Producer, its successors, licenses and/or assignees, with any agency, court, administrative body, or in any forum, on condition that payment in full is made pursuant to the terms of this Settlement Agreement.

*Id*. at 76.  Full payment agreed under the Settlement Agreement was paid to Plaintiffs.  *Id*. at 82; (Rec. Doc. 84-1 at 7).  The Union and Spring Break Louisiana agreed that the value of these full payments were the "amounts due and owing" to the aggrieved, including Plaintiffs, that were party to the Settlement Agreement.  (Rec. Doc. 80-3 at 74).

Plaintiffs filed this present action against Spring Break '83 Production, LLC; Spring Break '83 Distribution, LLC; Big Sky Motion Pictures, LLC ("Big Sky"); Spring Break Louisiana; George Bours; John Hermansen; Mars Callahan; and Randy Chortkoff ("Defendants"), alleging that Defendants had failed to pay wages to Plaintiffs.  (Rec. Doc. 42 at 3, 4).  Defendants removed the action from the Superior Court of the State of California for the

2

County of Los Angeles to the United States District Court for the Central District of California. (Rec. Doc. 1 at 2).  Defendants subsequently transferred the action to the United States District Court for the Eastern District of Louisiana.  (Rec. Doc. 33 at 9).  On May 10, 2011, Defendants filed a motion for summary judgment, alleging an absence of any dispute over material facts. (Rec. Doc. 80).

In support of their motion for summary judgment, Defendants assert that Spring Break Louisiana was the sole employer of Plaintiffs during the production of the movie.  (Rec. Doc. 80-1 at 13).  Defendants provide declarations from each individual defendant that describe their work responsibilities and any employee oversight roles that they had.  (Rec. Docs. 80-5; 80-6; 80-7; 80-8).  Defendants also rely on the declaration of Mars Callahan, a member of Big Sky and the writer and an executive producer of the movie, to deny Big Sky's involvement in employment and day-to-day operations of the movie.  (Rec. Doc. 80-1 at 10-11); (Rec. Doc. 80-6 at 2).  In addition, Defendants note that, of all Defendants, only Spring Break Louisiana is a signatory to the CBA.  (Rec. Doc. at 13); (Rec. Doc. 80-3 at 65).

Plaintiffs counter Defendants' motion with allegations that the individual Defendants and Big Sky directly supervised employees during the production of the movie or were directly involved with employee compensation.  (Rec. Doc. 84 at 7-8).  In support of these claims, Plaintiffs present the declaration of John T. Martin ("Martin Declaration"), who was the Key Grip during the production of the movie.  (Rec. Doc. 84-2).  In his declaration, Martin describes his interactions with Big Sky and the individual Defendants.  For example, Martin states that he had direct interaction with Mars Callahan, that Callahan would issue instructions and had the power to hire and terminate employees, and that "it was clear that [Callahan] was the 'boss' on the set."  *Id*. at 2-3.  Furthermore, Martin states that Callahan assured him that he would make

sure that the employees received their wages.  *Id*. at 2.  Martin also states that George Bours and John Hermansen oversaw the final payment of wages, and that Randy Chortkoff was the "'money man' of the production . . . and . . . was in charge of all the financial matters of the company including the payment of wages."  *Id*. at 3-4.  Finally, Martin states that Mars Callahan said that Big Sky was running the movie, that Big Sky was an "umbrella" company that controlled the production of the movie, and that Big Sky corporate headquarters handled employment related disputes that arose during the production of the movie.  *Id*. at 2-3 (internal quotations omitted).  In support of these statements, Martin provides a paystub from PAV Film Services, Inc. for work that he completed during the production of the movie and several screenshots of the Big Sky website that describe various aspects of Big Sky operations and discuss the production of the movie.  (Rec. Docs. 84-3 through 84-9).

## II.  LEGAL STANDARDS AND ANALYSIS

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

In the present action, Plaintiffs raise breach of contract and unpaid wages claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Louisiana Wage Payment Act ("LWPA"), La. Rev. Stat. § 23:631.  (Rec. Doc. 42 at 2, 3, 4).  Plaintiffs also seek to extend liability to Big Sky under the theory that Spring Break Louisiana was merely an alter ego of Big Sky.  (Rec. Doc. 84 at 8).  Defendants deny that Spring Break Louisiana was an alter ego of Big Sky.  (Rec. Doc. 87 at 2).  Furthermore, Defendants argue that Spring Break Louisiana was Plaintiffs' only employer during the production of the movie.  (Rec. Doc. 80-1 at 8).  Finally, Defendants argue that Plaintiffs' claims were settled by the Settlement Agreement. *Id.* at 14.

This Court holds that Defendants' proffered declarations meet the initial burden of showing a complete absence of disputed material facts because the declarations and their attachments present evidence that would persuade a reasonable jury to find in Defendants' favor. Thus, Defendants have successfully shifted the burden to the Plaintiffs "to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom*, 47 F.3d at

1462.  Therefore, the Court must now determine whether the evidence presented by Plaintiffs in support of their allegation that Big Sky and the individual Defendants were employers amounts to more than "unsubstantiated assertions" and "conclusory allegations."  *See Hopper*, 16 F.3d 92; *Lujan*, 497 U.S. at 871-73; *Donaghey*, 974 F.2d at 649.

The Court will address Plaintiffs' claims in turn; however, as a preliminary matter, because Plaintiffs do not oppose granting summary judgment in favor of Spring Break '83 Productions, LLC or Spring Break '83 Distribution, LLC, this Court GRANTS summary judgment for these two defendants without further discussion.  (Rec. Doc. 84 at 1).

### A.  Piercing the Corporate Veil

Under Louisiana law, individual members of a limited liability corporation ("LLC") are typically insulated from personal liability for the actions of their corporation.  This insulation is based upon the presumption that "[t]he personality of a juridical person is distinct from that of its members," where a juridical person is "an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Ann. Art. 24 (1988).  Because of this presumed division between members and juridical persons, "[e]xcept as otherwise specifically set forth . . . , no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company."  La. Rev. Stat. Ann. § 12:1320(B) (1993).  Thus, in most circumstances, a creditor of a corporation cannot compel members of the corporation to pay debts due by the corporation.  *Glazer v. Comm'n on Ethics for Pub. Emps.*, 431 So. 2d 752 (La. 1983) (citing La. Civ. Code Ann. Art 437).

In order to hold an individual liable for their actions as an agent of the corporation, the plaintiff must successfully pierce the corporate veil.  However, courts are very reluctant to

6

permit such an action.  *Prasad v. Bullard*, 51 So. 3d 35, 40 (La. App. 5 Cir. 10/12/2010) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F. 3d 347, 359 (5th Cir. 2003)).  At least one of four general circumstances must be satisfied before a court will pierce the corporate veil.  First, a court will pierce the corporate veil if a third party is a victim of fraud, breach of professional duty, negligence, or another wrongful act by the individual member of the LLC.  *Id*.  Second, a court will pierce the corporate veil if the members of the LLC use the corporate form to "'defeat public convenience, justify wrong, protect fraud, or defend crime.'"  *Glazer*, 431 So. 2d at 757 (quoting *U.S. v. Milwaukee Refrigerator Transit Co.*, 142 F. 247, 255 (E.D. Wis. 1905)).  Third, a court will pierce the corporate veil if adherence to the corporate form would clearly result in inequity.  *Id*. (citing *Watson v. Big T Timber Co.*, 382 So. 2d 258 (La. App. 3 Cir. 1980); *Liberto v. Villard*, 386 So. 2d 930 (La. App. Cir. 3d 1980); *Smith v. Moore*, 347 So. 2d 316 (La. App. 4 Cir. 1977)).  Fourth, a court will pierce the corporate veil if it finds evidence of misuse of corporate privilege.  *Glazer*, 431 So. 2d at 758 (citing Ballentine, *Corporations*, § 122 (Rev. Ed. 1946), p. 293)).

### 1. *Individual Employees Are Not Alter Egos of Spring Break Louisiana*

In this case, Plaintiffs seek to assign liability for their causes of action against individual defendants George Bours, John Hermansen, Mars Callahan, and Randy Chortkoff.  (Rec. Doc. 42 at 2).  However, Plaintiffs have not made allegations or presented evidence that satisfy any of the corporate veil-piercing factors discussed above.  Thus, this Court declines to pierce the corporate veil to hold individual employees of Spring Break Louisiana liable for the causes of action stemming from the actions of Spring Break Louisiana.  Accordingly, insofar as the individual defendants acted merely as members of Spring Break Louisiana and not as employers

of Plaintiffs, the individual defendants are not liable to Plaintiffs for breach of contract or unpaid wages.[2]

### 2. Spring Break Louisiana Is Not An Alter Ego of Big Sky

Plaintiffs allege that Spring Break '83 Louisiana LLC is an alter ego of Big Sky.  (Rec. Doc. 84 at 6).  Under Louisiana law, when a court considers whether one party functions as the alter ego of another, the court must consider the totality of the circumstances.  *Prasad v. Bullard*, 51 So. 3d 35, 40 (La. App. 5 Cir. 10/12/2010).  The Louisiana Supreme Court has suggested a non-exclusive list of factors for courts to consider when determining whether to apply the alter ego doctrine: "(1) [C]ommingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings."  *Id.* at 40-41 (citing *Riggins v. Dixie Shoring Co., Inc.*, 590 So. 2d 1164, 1168 (La. 1991)).  In this case, Plaintiffs have failed to provide a factual basis for their allegation that Spring Break Louisiana is an alter ego of Big Sky.  None of the assertions in the Martin Declaration or its supporting attachments address any of the five factors prescribed under Louisiana law for determining the existence of an alter ego.  Thus, Plaintiffs have failed to provide any evidence that could convince a reasonable jury that Spring Break Louisiana is an alter ego of Big Sky under Louisiana law.  This Court therefore holds that Spring Break Louisiana is not an alter ego of Big Sky.

---

[2] Plaintiffs' claim that the individual defendants were Plaintiffs' employers during the production of the movie is discussed below in section B.

### B. Classification of Defendants as Employers under FLSA and LWPA

Plaintiffs and Defendants dispute which Defendants in this action qualify as Plaintiffs' employers under the FLSA or LWPA.  This issue is relevant in the present matter because individuals who are employers under the FLSA or LWPA might be liable for Plaintiffs' alleged unpaid wages.

The individual Defendants' status as employees of Spring Break Louisiana forces the Court to weigh the broad employer definitions of the FLSA  and LWPA against the insulation against liability that LLCs offer employees.  As this Court discussed above, the record does not indicate that any of the individual employees committed fraud or misused the corporate structure to the disadvantage of Plaintiffs.  *See Prasad*, 51 So. 3d at 40; *Glazer*, 431 So. 2d at 757-58. Thus, this Court has already concluded that Plaintiffs' allegations do not justify a piercing of the corporate veil to hold the individual Defendants liable for their actions as employees of Spring Break Louisiana.  For the same reasons, the individual employees of Spring Break Louisiana are not individually liable for Plaintiffs' alleged FLSA and LWPA violations.  However, even if the individual Defendants were not employees of Spring Break Louisiana, they still would not be employers of Plaintiffs for the reasons discussed below.

### 1.  FLSA Definition of Employer

Plaintiffs argue that under the FLSA's definition of "employer," Big Sky and the individual Defendants were employers of Plaintiffs during the production of the movie.  (Rec. Doc. 84 at 17).  Under the FLSA, any employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid

9

overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The FLSA defines an employer as "'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Mendoza v. Essential Quality Construction, Inc.*, 691 F. Supp. 2d 680, 684 (E.D. La. 2010) (Africk, J.) (quoting 29 U.S.C. § 203(d)).   This definition is intended to be "'sufficiently broad to encompass an individual who, though lacking a possessory interest in the employer corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees.'" *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194-95 (5th Cir. 1983) (internal quotation marks omitted)).   In other words, an individual is an employer if he "independently exercise[s] control over the work situation." *Id.* at 329 (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)).   Furthermore, the broad definition prescribed by the FLSA permits multiple individuals within an organization to be defined as employers for the purposes of the FLSA. *Id.* (citing *Sabine Irrigation Co.*, 695 F.2d at 196 (supporting the assertion that individual employers may be enjoined along with the corporate employer for FLSA violations)); *See also Grim Hotel*, 747 F.2d at 971-72 (holding that a hotel corporation and its president were joint employers for the purposes of the FLSA).

The United States Court of Appeals for the Fifth Circuit has prescribed an economic reality test that uses dependency as a threshold criterion for establishing an employer/employee relationship for the purposes of the FLSA. *See Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979) ("The touchstone of economic reality in analyzing a possible employee/employer relationship for purposes of FLSA is dependency." (internal quotations omitted)); *Mendoza*, 691 F. Supp. 2d at 685 ("The 'final and determinative question' is whether

'the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.'" (quoting *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1993))).  As an aid for gauging dependency, the United States Court of Appeals for the Fifth Circuit has suggested a five-factor analysis:

> (1) [T]he degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Reich*, 998 F.2d at 327.  No single *Reich* factor is determinative.  *Id.*

In *Reich v. Circle C. Investments, Inc.*, the Fifth Circuit held that dancers at a club were not self-employed; rather, the court held that the dancers were employees of both the club and an individual who did not have an ownership interest in the club.  *Id.* at 327, 329.  The court concluded that the individual was an employer because, despite working with the club under a consulting contract that excluded responsibility for personnel matters, the individual "exercised control over the work situation" by hiring and supervising dancers, giving specific instructions to the club's employees, signing pay checks, and circulating inter-office memoranda.  *Id.* at 329. On the other hand, in *Altier v. Worley Catastrophic Response, L.L.C.*, the United States District Court for the Eastern District for Louisiana held that a company, whose boilerplate employment contract provisions were included in the contract signed by employees of a subcontractor, was not an employer of the subcontractor's employees.  No. 11-241, Westlaw 1791292, at *1-3 (E.D. La. May 9, 2011) (Barbier, J.).  Applying the five-factor dependency test from *Reich*, the court concluded that, even if the contract provisions indicated a "'degree of control exerted by the alleged employer,'" absent additional evidence, that control did not address the remaining four

11

*Reich* factors or "the linchpin of the [economic reality test]—dependency." *Id*. at *3 (quoting *Reich*, 998 F.2d at 327).

In this case, the *Reich* test is ill-suited to evaluate whether an employer/employee relationship existed between Defendants and Plaintiffs. Unlike *Reich*, where the threshold question was whether the plaintiffs were self-employed, here, Defendants do not allege that Plaintiffs were self-employed. *Reich*, 998 F.2d at 326; (Rec. Doc. 80-1 at 9). Instead, the record clearly establishes that Spring Break Louisiana employed Plaintiffs, and the parties disagree over whether other Defendants also acted as employers of Plaintiffs during the production of the movie. (Rec. Doc. 80-3 at 65); (Rec. Doc. 84 at 6-7). Furthermore, unlike *Reich*, where it is unclear whether the alleged employer's consulting contract made the individual an employee of the club, in this case, the record clearly establishes that the individual Defendants were employees of Spring Break Louisiana. 998 F.2d at 329; (Rec. Doc. 80-2 at 1; Rec. Doc. 80-6 at 2; Rec. Doc. 80-7 at 2; Rec. Doc. 80-8 at 2). Thus, rather than relying upon the ill-fitting five-factor *Reich* analysis of the economic reality test, this Court looks for other evidence of dependency. *See Reich*, 998, F.2d at 327.

Under the economic reality test, the Defendants did not employ Plaintiffs. Unlike *Reich*, where the court concluded that the individual was an employer because he hired and supervised the plaintiffs, gave the plaintiffs specific instructions at work, signed the plaintiffs' pay checks, and circulated inter-office memoranda, here, Plaintiffs have not alleged such substantial interaction with any of the individual Defendants. 998 F.2d at 329. While this Court does not doubt that Plaintiffs had interactions with the individual Defendants, the Martin Declaration's claims that Mars Callahan was the "boss," that Randy Chortkoff was the "money man," and that George Bours and John Hermansen were responsible for resolving unpaid wages do not suggest

12

that Plaintiffs depended upon the individual Defendants or that any of these Defendants could "independently exercise control over the work situation."  (Rec. Doc. 84-2 at 3-4); *Reich*, 998 F.2d at 329.  Thus, under the Fifth Circuit's application of the economic reality test, Plaintiffs have failed to present evidence that, even when viewed in the light most favorable to Plaintiffs, could persuade a reasonable jury that Plaintiffs depended upon the individual Defendants sufficiently to establish an employer/employee relationship.  *See Altier*, No. 11-241, Westlaw 1791292, at *3.

Likewise, just as this court in *Altier* concluded that evidence of "a degree of control" did not satisfy the economic reality test's underlying requirement of dependency, here, Plaintiffs have failed to present evidence that, even when viewed in the light most favorable to Plaintiffs, exhibits Plaintiffs' dependency upon Big Sky.  No. 11-241, Westlaw 1791292, at *3.  Like *Altier*, where the corporation's business relationship with the subcontractor might have resulted in the corporation's exerting some control over the subcontractor's employees, in this case, Spring Break Louisiana's subsidiary relationship with Big Sky might have resulted in Big Sky's exerting some control over the Spring Break Louisiana employees.  *Id*.  However, just as this degree of control in *Altier* did not address the central question of dependency, here, the record does not include any evidence that suggests that Plaintiffs' relationship with Big Sky embodied the dependency necessary to satisfy the economic reality test.  *Id*.; *see also Weisel*, 602 F.2d at 1189.  Thus, just as the court in *Altier* held that the corporation was not an employer for the purposes of FLSA claims, here, Big Sky is not Plaintiffs' employer for the purpose of Plaintiffs' FLSA claims.  No. 11-241, Westlaw 1791292, at *3.

### 2.  LWPA Definition of Employer

Plaintiffs argue that the individual Defendants and Big Sky were employers under the LWPA.  (Rec. Doc. 84 at 17).  Louisiana courts apply a five-point test when determining whether an employer/employee relationship for the purposes of the LWPA:

> (1) [W]hether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Mendoza*, 691 F. Supp. 2d at 686 (citing *Gordon v. Hurlston*, 854 So. 2d 469, 472 (La. App. 3 Cir. 2003)).  Furthermore, "'it is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists.'"  *Id.* (quoting *Gordon*, 854 So. 2d at 472).

For example, in *Mendoza v. Essential Quality Construction, Inc.*, this court held that plaintiffs had pled sufficient facts to support a plausible employer/employee relationship under the LWPA.  691 F.Supp.2d at 687.  In that case, the plaintiffs alleged that a general contractor responsible for a construction project hired a subcontractor, and that the contractor and subcontractor together hired the plaintiffs.  *Id.* at 682.  The plaintiffs also alleged that the contractor monitored the plaintiffs' work on a daily basis and approved the plaintiffs' rate of daily pay.  *Id.* at 683, 686.  The court concluded that the contractor's degree of involvement with the plaintiffs' work "suggest[ed] that [the contractor] had the right to control plaintiffs' work," thus satisfying the third factor in the LWPA employer/employee analysis.  *Id.* at 686.

14

In this case, Plaintiffs have failed to provide evidence that could convince a reasonable jury that the individual Defendants and Big Sky employed Plaintiffs during the production of the movie.  *See Anderson*, 477 U.S. at 247-48.  Under the first element of Louisiana's five-prong test for defining an employer under the LWPA, Plaintiffs have provided no evidence that the individual Defendants or Big Sky entered into a valid employment contract with Plaintiffs.  Instead, the only employment contract in the record is the CBA, to which Spring Break Louisiana is the only employer signatory.  (Rec. Doc. 80-3 at 64).  Moreover, Plaintiffs' claims in the Martin Declaration and its supporting attachments fail to address any of the remaining elements in the five-point test.  Finally, even if this Court were to abandon the five-point test and simply apply the "right to control or supervise" standard, unlike the plaintiffs in *Mendoza*, who alleged that the contractor hired them, approved their salary, and supervised them on the job every day, in this case, Plaintiffs were not hired by the independent Defendants or Big Sky, nor does the record suggest that any of the independent Defendants or Big Sky approved the rate of pay for Plaintiffs that the Union and Spring Break Louisiana agreed upon in the CBA.  691 F.Supp.2d at 683, 686.  Moreover, Plaintiffs' allegations that Mars Callahan issued instructions to employees working on the movie do not amount to the degree of control or supervision exhibited by the contractor in *Mendoza*.  *Id*.; (Rec. Doc. 84-2 at 3).  Therefore, unlike *Mendoza*, where the court held that the plaintiffs pled sufficient facts to support an allegation that the contractor had the right to supervise or control the plaintiffs, here, Plaintiffs have failed to provide any evidence that could persuade a reasonable jury that any of the individual Defendants or Big Sky had the right to control or supervise Plaintiffs during the production of the movie.  691 F.Supp.2d at 687.  Accordingly, this Court holds that during the production of the movie,

Mars Callahan, Randy Chortkoff, George Bours, John Hermansen, and Big Sky, were not employers of Plaintiffs for the purposes of Plaintiffs' LWPA claim.


### C.  Effect of Settlement Agreement on FLSA and LWPA Claims

Plaintiffs and Defendants do not dispute that unpaid wages were alleged by Plaintiffs in the grievances that the Union and Spring Break Louisiana settled in the Settlement Agreement. (Rec. Doc. 84-1 at 4-5).  The question that the Court addresses here is whether the Settlement Agreement offered a release of Plaintiffs' FLSA and LWPA claims for unpaid wages between October 6, 2007 and December 22, 2007.  Because this Court held above that only Spring Break Louisiana was an employer of Plaintiffs under the FLSA and LWPA definitions of "employer," the analysis in this section is limited to determining the effect of the Settlement Agreement upon Spring Break Louisiana's liability in the present matter.

Plaintiffs argue that the Settlement Agreement does not preclude this present litigation. (Rec. Doc. 84 at 11-12).  However, this argument is flawed.  Because the Settlement Agreement states that the Union "is the exclusive bargaining representative of the IATSE Employees, with the full power and authority to enter into this Settlement Agreement on behalf of IATSE Employees *and bind them* in accordance with the terms thereof," the Settlement Agreement's terms are binding upon Plaintiffs.  (Rec. Doc. 80-3 at 76) (emphasis added).  Furthermore, the Settlement Agreement states:

> The Union on its own behalf and on behalf of the IATSE Employees agrees and acknowledges that the Union has not and will not file any complaints, charges or any other proceedings against Producer . . . on condition that payment in full is made pursuant to the terms of this Settlement Agreement.

*Id.* Thus, the Settlement Agreement is binding upon the IATSE Employees in their individual capacities and prohibits those individuals from pursuing future legal action against Spring Break Louisiana after receiving their settlement payments.

### 1. Settlement of FLSA Claims

Plaintiffs and Defendants disagree whether the FLSA claim in this case could be settled privately through the Settlement Agreement.  This Court does not have binding precedent to address the question of whether parties may privately settle a FLSA claim that includes a dispute over whether the plaintiff worked on the days for which it seeks unpaid wages.  However, after careful review, this Court adopts the holding of the United States District Court for the Western District of Texas in *Martinez v. Bohls Bearing Equipment Co.*  361 F. Supp. 2d 608 (W.D. Tex. 2005).  In that case, after a thorough historical analysis of the FSLA, its amendments, and case law, the court concluded that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due.  A release of a party's rights under the FLSA is enforceable under such circumstances." *Id.* at 631.  The court defined a bona fide dispute as "'an honest disagreement between employer and employee.'" *Id.* at 625 (quoting 12 Fed. Reg. 7655, 7669 (Nov. 18, 1947)).  Furthermore, the court stated that the release need not mention the FLSA in order for the release to apply to FLSA claims because "'the remedy sought and settled [is] the precise remedy sought' in the litigation." *Id.* at 632 (quoting *Strozier v. General Motors Corp.*, 635 F.2d 424, 426 (5th Cir. 1981)).

In *Martinez*, the plaintiff alleged that his employer owed him more than $3,000 in unpaid overtime.  *Id.* at 612.  However, the employer's analysis of the plaintiff's time cards indicated that the employer only owed the plaintiff approximately $500.  *Id.* at 631.  The plaintiff then

accepted a $1,000 settlement check, and signed a document reading "I [plaintiff] on this [date], accept $1000.00 in full payment for all overtime accumulated and unpaid during the period from [date] to [date].  I consider this amount as full settlement for all overtime in question and reported."  *Id*. at 612.  The court stated that the plaintiff released his FLSA claims when he signed the document because the parties' disagreement over the amount owed was a bona fide dispute over liability.  *Id*. at 631-32.  Thus, the court held that the document that the plaintiff signed upon receipt of the $1,000 check was a valid release of the plaintiff's FLSA rights and was enforceable in the litigation that followed the settlement.  *Id*. at 632.

In this case, when Plaintiffs and Spring Break Louisiana entered into the Settlement Agreement, they continued to disagree as to whether Plaintiffs had worked the hours for which they sought compensation.  Indeed, the parties memorialized their continued disagreement in the Settlement Agreement, which reads: "Producer does not dispute that payments are due to the IATSE Employees … although *disputes remain between the parties as to the amounts that may be due*." (Rec. Doc. 80-3 at 73) (emphasis added).  Therefore, just as the court in *Martinez* concluded that a bona fide dispute existed because the employer and employee disagreed over the amount of unpaid wages owed to the employee, here, a bona fide dispute existed at the time of the Settlement Agreement because Plaintiffs and Spring Break Louisiana disagreed over whether Plaintiffs had worked the days for which they claimed unpaid wages.  *Id.*; 361 F. Supp. 2d at 612, 631.  Accordingly, like *Martinez*, where the court held that the private settlement was a valid release of the plaintiff's FLSA rights because a bona fide dispute over the number of hours worked existed, here, the Settlement Agreement relieved Plaintiffs of their FLSA claims in this action because the Settlement Agreement resolved a bona fide dispute over the number of

hours Plaintiffs worked.  Id.; 361 F. Supp. 2d at 632.   Therefore, the Settlement Agreement includes Plaintiffs' FLSA claims.

### 2. Settlement of LWPA Claims

The LWPA requires Louisiana corporations to provide unpaid wages for hours worked to discharged employees.  In relevant part, the LWPA states:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment . . . on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

La. Rev. Stat. § 23:631(A)(1)(a)(2011).   However, the LWPA only utilizes this fifteen day timetable for the payment of undisputed wages, stating that "[i]n the event of a dispute as to the amount due in this Section, the employer shall pay the *undisputed* portion of the amount due." La. Rev. Stat. § 23:631(B)(2011) (emphasis added).  Finally, the consequences of violating the LWPA are outlined in La. Rev. Stat. § 23:632, which states in relevant part that "[a]ny employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee . . . for ninety days wages at the employee's daily rate of pay."  La. Rev. Stat. § 23:632(2011).

In this case, Plaintiffs seek compensation under the R.S. 23:631(A)(1)(a) because Plaintiffs allege that Spring Break Louisiana failed to pay wages due to Plaintiffs within the timetable set forth in the statute.  (Rec. Doc. 42 at 3).  However, there is no dispute that Spring Break Louisiana and Plaintiffs disagreed over the amount due to Plaintiffs in order to resolve the grievance that Plaintiffs filed through the Union.  (Rec. Doc. 80-3 at 32).  Thus, Spring Break Louisiana did not violate La. Rev. Stat. § 23:631(A)(1)(a) because there was no undisputed amount of unpaid wages owed to Plaintiffs when they filed their grievance with the Union.  *See*

La. Rev. Stat. § 23:631(B)(2011).   Furthermore, as discussed above, the Union entered the Settlement Agreement on behalf of aggrieved employees, which included Plaintiffs.  (Rec. Doc. 80-3 at 76).  Because the Settlement Agreement is binding upon Plaintiffs and states that "[t]he Producer agrees to pay the amounts owed to the IATSE Employees as depicted in Schedule One, which are deemed to be the amounts due and owing," Plaintiffs therefore have agreed that they have received full payment for the unpaid wages that they seek in the present action.  *Id*. at 74. Therefore, because Plaintiffs received and deposited checks from Spring Break Louisiana in the amount required by the Settlement Agreement to settle their grievance of unpaid wages, no unpaid wages remain for Plaintiffs to seek under the LWPA.   (Rec. Doc. 84-1 at 7). Accordingly, Plaintiffs do not have a claim under La. Rev. Stat. § 23:632 because Defendants neither failed nor refused to comply with the provisions of La. Rev. Stat. § 23:631(A)(1)(a). Thus, the Settlement Agreement settled Plaintiffs' LWPA claims.

## III.  CONCLUSION

Accordingly

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.  (Rec. Doc. 80).

New Orleans, Louisiana, this 24th day of June, 2011.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**